IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **MARQUIS GREEN,** | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. SAG-20-2527 |
| **CASEY CAMPBELL,** *et al.,* | * | |
| Defendants. | * | |

* * * * * * * * * * * * *

## MEMORANDUM OPINION

Plaintiff Marquis Green ("Plaintiff") has filed a First Amended Complaint ("FAC") against Lieutenant Richard Hague, Lieutenant Jason K. White (Rtd.), and Major David Randall Appel (collectively "Defendants"), seeking compensation for injuries sustained while he was incarcerated at the Roxbury Correctional Institution ("RCI") in Maryland. ECF 71. Defendants have moved to dismiss most counts of the FAC. ECF 87. This Court has reviewed the motion, along with the opposition and reply. ECF 90, 93. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, Defendants' motion will be granted in part and denied in part.

I. **FACTUAL BACKGROUND**

The facts contained herein are derived from the FAC and are deemed to be true for the purposes of this motion. While incarcerated at RCI on February 28, 2020, another inmate, Tanner Johnson, attacked Plaintiff with an improvised knife. ECF 71 ¶ 2. Plaintiff received medical treatment offsite. *Id.* ¶ 16. Upon his return to RCI, Plaintiff was placed on administrative segregation ("Temporary Segregation") pending a formal hearing regarding the altercation with Johnson. *Id.* ¶ 17. After investigation, on March 3, 2020, RCI determined that Plaintiff had not violated any rules and scheduled him to return from segregation to general population. *Id.* ¶ 18.

Because Plaintiff believed Johnson to be a member of Dead Man Incorporated ("DMI"), a prison gang, he did not feel safe returning to general population, and he informed Hague of his concerns. *Id.* ¶ 19. Hague assured him that he would not be harmed. *Id.* Plaintiff began to walk to his new housing unit, but while en route another inmate made a threatening gesture to Plaintiff by putting his finger across his throat. *Id.* ¶ 20. Plaintiff therefore informed the tier officer that he was refusing the housing assignment. *Id.* ¶ 21.

White, the Shift Supervisor, questioned Plaintiff about his cell assignment refusal. *Id.* ¶ 22. Plaintiff told White that he refused the assignment because he did not "feel safe," had been "stabbed by [a] DMI member in HU 5 on Friday" and that the "Dogs are after him" ("Dogs" is a slang name for DMI members). *Id.* ¶ 22 (alteration in original). White did not investigate Plaintiff's assertions or take protective measures, but instead recommended Plaintiff be placed on Temporary Segregation as a sanction for refusing his cell assignment. *Id.* ¶ 23. White prepared a Notice of Inmate Rule Violation, which summarized Plaintiff's statements about his safety concerns. *Id.* ¶¶ 23–24. White's supervisor, Shift Commander Major Appel, reviewed and approved White's recommendations. *Id.* ¶ 24. Accordingly, Plaintiff went to Temporary Segregation until the charge against him resolved on March 15, 2020. *Id.* On that date, Plaintiff was scheduled for return to general population. *Id.* ¶ 25. He refused again. *Id.* ¶ 26. Plaintiff explained to Hague for a second time that he was fearful of assault. *Id.* Hague responded that if Plaintiff persisted, he would be transferred to North Branch Correctional Institution, where he would "really have something to be scared of." *Id.* ¶ 27. Plaintiff agreed to return to general population. *Id.* Plaintiff alleges that at the time Hague ordered Plaintiff returned to general population, Hague knew that an RCI Corrections Officer had intercepted a note from Johnson indicating that he assaulted Plaintiff pursuant to an order from another DMI member. *Id.* ¶ 28.

On March 17, 2020, two days after Plaintiff's return to general population, multiple inmates entered his cell, put a sheet over his head, and beat him unconscious. *Id.* ¶ 29. He suffered two fractured eye sockets and a fractured right arm, among other injuries. *Id.* ¶ 31. This lawsuit ensued.

II. **LEGAL STANDARD**

The FAC contains two counts. Count I alleges that Defendants violated the Eighth Amendment, acting with deliberate indifference to Plaintiff's health and safety by failing to take reasonable measures to protect him. Count II alleges supervisory liability. Each Defendant moves to dismiss each Count, with the exception of the claims in Count I against Hague.

A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g., In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).

### III.    ANALYSIS

#### A. Count I – Eighth Amendment

Defendants White and Appel seek dismissal of the claims asserted against them in Count I. They argue that the FAC does not sufficiently allege facts to establish a plausible claim that they had inferred the existence of an actual substantial risk of serious harm to Plaintiff from the limited information in their possession. *See* ECF 87-2 at 5 (noting that the test requires that "the defendant official . . . *must actually have drawn the inference*") (emphasis in original) (citing *Rich v. Bruce*, 129 F.3d 336, 340 (4th Cir. 1997)). However, taking all of the allegations in the FAC as true, and drawing all inferences in favor of Plaintiff at this stage, this Court disagrees. The FAC alleges that Plaintiff identified DMI to White and Appel as the group that was targeting him, told them that a DMI member had stabbed him on Friday, and told them that he did not feel safe. ECF 71 ¶ 22. It further alleges that he was then assaulted by "gang members" affiliated with the DMI member who had assaulted him in the first incident. *Id.* ¶ 4. Under the low bar applicable at the motion to dismiss stage, these facts suffice to state a claim for liability because it is plausible that White and Appel inferred a substantial risk of harm to Plaintiff from those facts. Of course, there may be issues relating to credibility or causation that ultimately affect Plaintiff's ability to recover, but those issues are not properly assessed at the motion to dismiss stage of this litigation.[1]

---

[1] For example, Defendants allege in their reply that White and Appel only caused Plaintiff to be placed into segregation and had no alleged involvement with him after his removal from segregation prior to his assault. ECF 93 at 6. Whether that set of facts poses a causation issue is best suited for resolution after the facts in the case have been established in discovery.

B.  **Count II – Supervisory Liability**

With respect to Defendants White and Hague, the FAC does not assert plausible claims of supervisory liability because it does not allege that either Defendant's subordinate engaged in conduct posing a risk of constitutional injury to Plaintiff. While the FAC alleges generally that White and Hague were supervisors, it does not specify whom they supervised and it does not allege that their supervisory actions (as opposed to the actions they personally took) resulted in harm to Plaintiff. Count II will therefore be dismissed against those two Defendants.

The FAC does allege, however, that Defendant Appel exercised supervisory authority over Defendant White. And the allegations in the FAC are clear that Defendant Appel knew of, and approved, Defendant White's decision to sanction Plaintiff for refusing to accept his cell assignment rather than investigating his assertions that a return to general population would place him in physical danger. Accordingly, and for the reasons set forth above, the supervisory liability claim in Count II against Defendant Appel will survive the motion to dismiss.

C.  **Qualified Immunity**

This Court disagrees with Defendants' contention, at this stage of the litigation, that the constitutional right at issue was not clearly established. Many cases explain that the Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan,* 511 U.S. 825, 833 (1994); *see Cox v. Quinn,* 828 F.3d 227, 235 (4th Cir. 2016) (noting that the Eighth Amendment mandates that prison officials "take reasonable measures to guarantee the safety of the inmates"). Many cases also recognize that government supervisors can be vicariously liable for the constitutional violations of their subordinates, including for violations of the Eighth Amendment. *See Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984); *Shaw v. Stroud*, 13 F.3d 791, 798, 802 (4th Cir. 1994). Accordingly, the

5

doctrine of qualified immunity does not shield Defendants from Plaintiff's claims at this stage, although Defendants are permitted to re-raise the issue at subsequent phases in the litigation.

**CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss, ECF 87, will be GRANTED as to the supervisory liability claims against Defendants White and Hague in Count II, but DENIED as to all remaining claims. A separate Order follows, which includes a date for a teleconference to update the Court as to the status of discovery and to schedule proceedings through trial.

Dated:  August 23, 2023                                            /s/
                                                            Stephanie A. Gallagher
                                                            United States District Judge